## READING vs. ROCKINGHAM.

Where service of a warning to depart the town is made, by leaving a copy with some person other than the pauper, at the house of the usual abode of such pauper, it is essential that the officer certify in his return that the person with whom he left the copy was *then resident therein* ; and without this fact appearing, the return is fatally defective.

AT the June term of the county court, 1826, a verdict was taken in this cause by consent, for the town of *Reading*, damages $76,71, subject to the opinion of the court, upon the following case agreed upon between the parties.

*Paul Fletcher*, a transient person, travelling through the town of *Reading*, was taken sick there, and was provided with necessaries by said town till he died, and this action is brought to recover the reasonable expenses of this last sickness; and the only question submitted to the court is, whether the said pauper was legally settled in said town of *Rockingham* ; he moved into the town of *Rockingham* the 6th day of February, 1815, and resided there till he moved out, the 20th of March, 1816. He was warned out of *Rockingham* the 21st September, 1815, agreeably to the copy of the record of the town of *Rockingham*, which is as follows, to wit :----

"State of Vermont, Windham County, ss.----To either con-
"stable of *Rockingham*, in the county of *Windham*----Greet-
"ing.

"You are hereby required to summon *Paul Fletcher*, now re-
"siding in *Rockingham*, to depart said town.----Hereof fail not,
"but of this precept, and your doings thereon, due return make
"according to law. Given under our hands, at *Rockingham*,
"this 10th day of September, A. D. 1815.

"PETER EVANS,     }   *Selectmen*
"LEVI HOIT,        }     *of*
"BENJ. SMITH, JR. } *Rockingham.*"

"Windham, ss.----Rockingham, Sept. 21, 1815. Then served
"the within precept, by leaving a true and attested copy of the
"same at the within named Paul Fletcher's last and usual place
"of abode, in Rockingham, in the hand of Zuba Fletcher, with
"my return thereon endorsed.

"*Attest,* EBENEZER LOCK, *Constable.*"

"Received Sept. 22, 1815, and recorded by me.

"JOSEPH WEED, *Town Clerk.*"

The said town of *Rockingham* can prove by parol, if such proof is admissible evidence, that said *Zuba Fletcher*, mentioned

in the return of the officer, was the wife of the said *Paul Fletcher*, residing at the time with her husband, and was of sufficient discretion.

Now it is agreed, that if the opinion of the Court shall be, that the said *Paul Fletcher* was legally settled in said town of Rockingham, judgment to be entered upon the verdict; and if not so settled in *Rockingham*, the verdict to be set aside, and a verdict and judgment to be entered for the town of Rockingham.

H. EVERETT, <i>for plaintiff.</i><br>J. H. HUBBARD, <i>for defendant.</i>

<i>Windsor; February, 1827.</i>

Reading vs. Rockingham

June 10th, 1826.

The case was argued by *H. Everett* for the plaintiff, and by *J. H. Hubbard* for the defendant.

The opinion of the Court was pronounced by

SKINNER, Ch. J. From the case as stated by the parties, it appears that Fletcher, the pauper, moved into the town of Rockingham on the 6th February, 1815, and resided there more than one year, viz. till the 20th March, 1816. A warning to depart, issued in due form by the selectmen of Rockingham on the 10th September, 1815, was served by the constable of Rockingham, to whom the same was directed, on the 21st of September, 1815, as appears of record in the town clerk's office of Rockingham, and there recorded the 22d September, 1815; the return endorsed upon the process is as follows, viz. "Windham, ss. Rockingham, Sept. 21, 1815. Then served the within precept, by leaving a true and attested copy of the same at the within named Paul Fletcher's last and usual place of abode, in Rockingham, in the hands of Zuba Fletcher, with my return thereon endorsed. Attest, *Ebenezer Lock*, Constable."

The statute directs the mode of service in this case to be the same as is pointed out for the service of the ordinary process of summons, by the 26th section of the judiciary act, by which it is declared, "that all writs of summons shall be served on the defendant by delivering him a true and attested copy of said writ, with the officer's return thereon; or by leaving such copy at the house of his usual abode, with some person of sufficient discretion then resident therein." The only questions between the parties in this case, arise out of the return of the officer. If the return endorsed is in conformity with that which is required by the statute, the pauper has no settlement in Rockingham, and the town of Reading cannot maintain the action; otherwise, his settlement is established in Rockingham, and judgment must be given upon the verdict. One objection to the certificate or return endorsed by the officer, is, that he has omitted to say he left the copy at the *house*, &c. which is essential. The statute directs the copy (if not delivered to the pauper) to be left at the *house* of his usual abode. It cannot be supposed the legislature intended any thing more by the term *house*, than the *place* in which the party resided. If his domicil should not

35

*Windsor,*
*February,*
*1827:*

Reading
*vs.*
Rockingham.
precisely come up to what is usually denominated a *house*, no doubt service could be made in his absence. The return, in this particular, must be considered a substantial compliance with the statute. The fact certified shows conclusively, that if the pauper had his residence in a house, the copy was there left, and the language, *house* of his abode, made use of by the legislature must be taken as synonymous with *place* of his abode.

It is further objected, that it does not appear from the return that Zuba Fletcher, the person with whom the copy was left, was, in the words of the statute, a person of *sufficient discretion.* This presents a question of more difficulty. In the performance of this part of the duty required of the officer, the law has affixed no definite rules by which he is to be governed. The act is not purely ministerial. He has necessarily a discretion to exercise, and in deciding upon the capacity of the person to whom he commits the copy, if he does not act corruptly, he cannot be made answerable. But it is said, as the fact of the person's being of sufficient discretion is material, and expressly required by statute, it ought to appear in the return, so that if not true, an action may be sustained for a *false* return. If this was the only remedy, I should myself have no doubt it ought to be certified in the return; but I can see no reason why an action may not as well be sustained against the officer for omitting to perform his duty, admitting the law does not require him to make return of his doings in this particular, as for a false return, in case he was required to make his return in the manner contended for by the plaintiff. The person being named, no additional burden is cast upon the party in making the proof in such case. The same evidence would avail him as in an action for false return. No decided opinion, however, is intended to be expressed upon this point, as upon the remaining question the Court are unanimous in the opinion the return is defective. The *person* with whom the copy is left at the house or place of abode of the party, must be *then resident therein.* The object of the service is *notice* to the party, and the legislature have carefully directed a course of proceeding most likely to effect this object. If the party is absent, or secretes himself, that process may not fail of service, a copy is to be left with one of the family, or some person residing at the time in his domicil. The presumption is, it will then come to his knowledge; but no such presumption can arise if the copy is committed to a stranger who may be casually there. If this should be sanctioned, frauds would be practised and judgments obtained against parties without notice. The fact that the *person* with whom the copy is left resides in the house, can be learned by the officer in the same way that he can learn the fact of the *party's* residing there. The place of the residence of the one, may be ascertained with the same facility and as correctly as the other, and in law they are equally important. If the officer may, where he does not deliver the copy to the party himself, omit to certify that the *place* was the residence of the *per-*

*son* with whom he left it, he may, upon the same principle, omit to certify that he left it at the *place* of the abode of the *party.* In the latter case, no one would hesitate to pronounce the return fatally defective. The presumption that the officer left the copy at the place of the party's residence, would rest upon the same foundation as that the person with whom it may have been left was a resident in the house. It is said, that no evil can result from the omission, and that it is more for the interest of the party complaining, as the fact may then be put in issue between the parties; but if returned, it is conclusive. The same may be urged, and will apply with equal force, to the omission of any and every material part of the return. That which is comprised in the officer's return beyond what the law requires, is not conclusive, and if evidence at all, is but *prima facie.*

The decisions are, that the officer's return is conclusive between the parties in the suit and their privies. The doctrine has as yet been carried no farther. *Reading* can with no more propriety be considered a party to the process of warning, than any other town in the state, and surely no action could by that town be sustained against the officer in this case, either for a false or defective return. That the inhabitants of a town may avoid the charge and burden of maintaining strangers coming to reside with them, who may become poor and unable to support themselves, the legislature have provided that such persons may within one year be warned to depart, and that a record of the proceeding be made in the office of the town clerk of such town, within a limited time, and it is necessary that all that which the law requires in such proceeding should appear of record, as well the officer's doings upon the process, as the process itself. It may with propriety be likened to the proceedings pointed out in the statute by which one may acquire and another be divested of a title to real estate, and the same principles that have obtained as applicable to the officer's return upon the process in that case, ought to govern in this. All persons interested are in both cases referred to the record for the evidence, and it is by that the right is determined. The officer's return is matter of record, and in this case the law particularly requires it to be recorded.---*Compiled Laws,* 1*st vol. p.* 400. And there would be the same danger of fraud and perjury to admit parol testimony to supply any defect in this case, as in the case of final process levied on lands. Reading, from examining the records of Rockingham, find a material part of the duty of the officer is omitted in the return, whether performed or not may be beyond their power to learn, and it would be unjust and unreasonable that they should be obliged to commence their action or remove the pauper at their peril, exposed to the consequences of what may turn out in the proof on trial.

That which is essential, and which the officer is required to perform, must appear in his return; important rights depend

*Windsor,*
*February,*
*1827.*

*Reading*
*us.*
*Rookingham.*

upon it, it is matter of record, and it cannot be aided by parol. In the case of *Davis* vs. *Maynard*, 9 *Mass. Rep.* the court say, the sheriff who returns that he has served his precept, must return specifically what he has done, that the court may see whether his doings have or have not been according to law.

In the cause of *Parrington* vs. *Loring*, 7 *Mass. Rep.* Chief Justice *Parsons* says, there would be great danger of frauds and perjury to admit parol testimony in such case. It is true this Court held, in the case of *Pittsford* vs. *Brandon*, *Brayton*, 183, that the *time* when the officer serving the warning made return thereof into the office of the town clerk, might be shown by parol, and the reason assigned is, that the evidence of this fact is not required by law to be matter of record. It can be no part of the officer's return, and the statute has not required the town clerk to note the *time* upon the record.

Judgment must be rendered on the verdict.