TOWN OF BARNET vs. TOWN OF CONCORD.

Where a *warning-out process* was issued directing the constable of a town to summon a man and his wife to depart said town, to prevent their gaining a legal settlement therein,—it was held that no service need be made on the wife, and that if the service was sufficient to prevent the husband from gaining a settlement, it, of course, prevented her.

Where a constable in his return on a *warning-out process* stated that he had served the precept *by leaving a true and attested copy of the same at the last and usual place of abode of the person named in the warning, " with a person of discretion residing therein," with his return thereon endorsed,*—it was held to be bad, because the *name* of the person with whom the copy was left was not mentioned, and because it was not stated that such person was one of *sufficient* discretion.

Where an order of removal is made agreeably to the acts respecting *a legal settlement and providing for the poor,* the copy, which is required by the 5th section of the act of 1817, to be left with the overseers of the poor of the town to which the pauper is ordered to be removed, must correspond with the original in every substantial part.   If there is an omission in the copy which would be fatal, if it were in the original proceeding, the statute is not complied with.

The removal of a pauper cannot legally be made before the day fixed upon by the justices for the pauper to remove himself.

This was an appeal taken by the overseers of Concord from an order of removal of Abigail Emerson, Sally Emerson, Eluthera Emerson, and Darius Emerson, town paupers, made by two justices of the peace in and for said county of Caledonia.   The appellants filed a motion to quash the proceedings of the justices, and alleged several causes; to wit:

1st.   Because the justices making said order of removal did not examine the said paupers touching their ability and last place of legal settlement, nor for any other purpose.   2d.   Because the said justices had not alleged in their order of removal that they examined the said paupers upon oath, touching their ability and last place of legal settlement.   3d.   Because the officer who removed said paupers to said town of Concord, did not leave *with either of*

*said overseers of Concord* an attested copy of his said warrant.
4th. Because an attested copy of said order of removal was not
left with either of the overseers of the poor of said Concord within
thirty days after the making of said order, nor at any time since.
5th. Because the copy of said order of removal required to have
been left with one of the overseers of the poor of Concord, does
not direct the said paupers to remove to said town of Concord
on or before the 2d day of March 1831 ; nor does said copy
mention any day when said paupers should so remove. 6th. Be-
cause the warrant of removal was issued by the said justices, and
the officer, to whom said order of removal was directed, actually
removed the paupers to said town of Concord, before the time pre-
fixed by the said justices for said paupers to remove themselves
to said town of Concord, had expired.

The motion to quash was overruled.

The officer's return on the warrant of removal was as follows,
excepting the words in italics, which were omitted.

" *State Vermont,* }   *Barnet, March* 2, 1831.—Then served this
   *Caledonia, ss.* }  warrant by taking the bodies of the within
named Abigail Emerson, Sally Emerson, Eleuthera Emerson
and Darius Emerson, wife and children of John S. Emerson, late
of Barnet, deceased, together with their effects, and removed them
to Concord, county of Essex, to the house of John Wheeler, jr.,
in Concord, one of the overseers of the poor of said town, and
there left them, and left a true and attested copy of this warrant,
*at said Wheeler's dwelling house in the care and possession of
his father, then resident therein,* together with my return hereon
thereon endorsed.           *Delano Cushman, authorized.*"

The appellees requested the court to permit the officer, who re-
removed the paupers to Concord, to amend his return on said war-
rant of removal by adding the words in italics. This was objec-
ted to by the appellants ; but the court permitted the officer thus
to amend his return on paying costs of the term, and taking no
costs. The appellees contended that a copy of said order of re-
moval was left with one of said overseers of Concord within thirty
days from the order of removal ; and offered in evidence a copy
which did not name any day when said paupers should remove :
to the admission of which copy the appellants objected ; but the
court admitted it, and overruled the motion to quash.

The appellants then pleaded, that the said paupers were undu-
ly removed, because the town of Concord was not the place of the
paupers' legal settlement ; which issue was by agreement of the
parties closed to the court. To support said issue the appellants
gave in evidence a written statement of the facts made in said

CALEDONIA,
March,
1832.

Barnet
vs.
Concord.

cause, signed by C. Davis, attorney for *Barnet,* and by D. Hib-bard, jr. attorney for *Concord,* which was as follows :

"That John S. Emerson was married in Waterford, 30th December, 1810, to Abigail Stevens, now the widow Abigail Emerson ; that in 1811, he removed with his family to *Concord,* and resided there,and paid taxes two years, without being legally warned out ; that he and his family then removed back to Waterford,and remained two years and over ; and that in the summer or fall of 1815, he removed with his family to *Barnet,* and continued to reside there till the last of June, 1827, when he died ; that his wife and family lived with him all the time, and that his widow has ever since continued to reside there until removed by the present order ; that no record was made in *Barnet* of his going to reside there in pursuance of the proviso of the 1st section of the act of Nov. 4th, 1817 ; and that none of the towns aforesaid ever furnished any support to Emerson or his family till this removal was made."

The appellees offered in evidence a warning-out process of the select-men of the town of Waterford, which was as follows :

"To either constable of the town of Waterford in the county of Caledonia,                    .                    Greeting.

You are hereby required to summon John S. Emerson and Nabby Emerson, his wife, now residing in said Waterford to depart said town : hereof fail not ; but of this precept, and your doings herein, due return make according to law. Given under our hands at Waterford, this 16th day of January, A. D. 1811.

> *Sylvanus Hemmingway,* ) Select-men
> *Joseph Felch,* { of
> *Eben Farnam,* ) Waterford.

*Caledonia, ss. Waterford, 20th February,* 1811.

Then served this precept by leaving a true and attested copy of the same at the last and usual place of abode of the within named John S. Emerson, with a person of discretion residing therein, with my return hereon thereon endorsed.

> *Elijah Freeman,* Constable.

To the admission of this the appellants objected ; because the warrant was not served on both of the paupers, and because it was not stated with whom the copy was left ; but the court overruled the objection, and admitted the evidence. The appellees further offered in evidence a warning-out process of the select-men of *Barnet* ; to the admission of which the appellants objected ; because the warrant was signed by only two select-men ; but the court overruled the objection, and admitted the same. It was proved by the testimony of witnesses on the stand, that the pau-

per, Abigail Emerson, and her late husband, were married a short
time previous to the warning-out in Waterford, at which latter pe-
riod neither of them had acquired any settlement there ; that very
soon after the warning, they removed from Waterford to *Concord*,
where they lived two years or more, and then removed back into
Waterford in the year 1813, where they continued to reside,
without being again warned out, till the fall of A. D. 1815, when
they removed to *Barnet* ; and within the year after the last remo-
val the warning-out in *Barnet* took place.     This proof, together
with the two warning-out processes, above referred to, and the
written statement of the counsel, also referred to, made all the
evidence upon the question of settlement.   The court adjudged
that the paupers were duly removed.   To which decisions of the
court the appellants excepted, and removed the case to this
Court.

CALEDONIA,
March,
1832.

Barnet
vs.
Concord,

The cause was now argued by *Mr. Davis*, for the plaintiffs,
and by *Mr. Hibbard*, for the defendants.

WILLIAMS, J., delivered the opinion of the Court.—In this
case it appears there was a motion to quash the proceedings,
which was overruled ; that an issue was joined, which was tried
by the court.   On the trial it appeared in evidence that John S.
Emerson, who was the husband of Abigail Emerson, one of the
paupers removed, and father of the others, removed into the
town of *Concord* when the act was in force in relation to warning
out persons to prevent their gaining a settlement, resided there
over a year, and thereby gained a settlement for himself and fam-
ily in *Concord*.   In 1813 he removed to Waterford, and there
resided over a year without being warned out.   By this residence
he gained a settlement in Waterford, and lost his settlement in
*Concord*, unless he was prevented by a previous warning in Wa-
terford ; for it appears, that previous to his going to *Concord*, he
had resided in Waterford, where a warning issued against him and
his wife, which was served on him.   The effect of this warning,
if regular, not only prevented his gaining a settlement in Water-
ford by that residence, but according to the authority of the case
of *Ira* vs. *Clarendon*, *Bray*. 180, also prevented his gaining a
settlement in the same town by any subsequent residence, while
that act was in force.   In 1815, Emerson and his family removed
to *Barnet*, where they continued until June, 1827, when Emer-
son died.   His widow and his children have since resided there,

CALEDONIA,
March,
1832.

Barnet
vs.
Concord.

until this order of removal was made.   While they resided in *Barnet*, and before they had continued there a year, they were warned out of *Barnet* ;  and as this warning appears to be regular and unexceptionable, they acquired no settlement by that residence.

The question in this case is, whether, they were settled in *Concord* or Waterford?  and this depends wholly upon the sufficiency of the warning made by the town of Waterford.

The manner of serving this warning is described by the constable in his return, and is as follows :   " By leaving a true and attested copy of the same, at the last and usual place of abode of the within named John S. Emerson, with a person of discretion, residing therein, with my return hereon thereon endorsed."   As Abigail Emerson is described in the warning, as the wife of the said John S. Emerson, if the service is good so as to prevent him from gaining a settlement, it of course prevented her ; and it was unnecessary to make any service upon her, although she was named in the warning.

But there is an objection to the service of this warning, which the Court have been called on to consider.   It will be remembered that these warnings were to be served in the same manner as is provided for the service of writs of summons.

In deciding the cases which have arisen under the act in relation to warnings, courts have required a great degree of accuracy in the proceedings of the towns and their respective officers. This has resulted in a measure from necessity, and not altogether from the principle which is admitted and recognised of their being no equity between contending towns.

These warnings were required by the statute to prevent persons from gaining a settlement, and for no other purpose; and both the form of the warning and the manner of service were pointed out. They were not processes upon which any after proceedings were to be had.   There was no court or tribunal to which they were to be returned, who were to exercise any judicial authority over them, or authorize any amendments, or the correction of any errors, which may have intervened.

The warning out was a mere act or ceremony designed for a single purpose.   Any other ceremony, or any other mode of service of the warning might have been prescribed.   But when this particular mode was prescribed, courts in judging upon it could do no otherwise, than to inquire whether it had been followed. Hence the inquiry has not been, whether the town had sufficiently

CALEDONIA,
*March,*
1832.

Barnet
*vs.*
Concord.

manifested their intention not to receive the persons warned, as inhabitants ; whether the persons can be presumed to have had notice of the warning ; whether a want of regular service had been waived or cured by any after proceedings ; but only whether the statute had been followed.    Hence no amendments could be made in the warning, service,or certificates of recording ; and none has been admitted ; but the whole has been adjudicated upon as it was found on the public records of the respective towns.    If a greater strictness has apparently been required in relation to these warnings, and the service of them, than is usually required in other processes, and the returns of services thereon, it is, because in other processes many defects, which are in reality departures from the law,are cured by appearance, or may be by amendment ; and on that account defendants have not thought it of consequence to notice them to the court, as they could be easily obviated by amendment.

The defect in the return of service of this warning is one of that character.    Had it been on a writ of summons, it would not have deserved notice, as the officer, by an amendment of his return,would probably have made it conformable to the statute.

Having nothing to guide us on this subject but the statute, we must have recourse to that ; and we there find that in serving writs of summons, it is required, that the officer serving the same shall deliver to the defendant a true and attested copy of the writ, with the officer's return thereon, or leave such copy at the house of his, her, or their, usual abode, with some person of sufficient discretion resident therein : and the manner of such service shall be particularly expressed in the return made by the officer.

It is a general principle in relation to all returns, that the officer must state what he has done, so that it can be determined from his return whether the requisites of the law have been complied with.    And, inasmuch as the return is *prima facie* evidence of the facts therein stated, it should afford to the party affected by it an opportunity to traverse it directly, or to sue for a false return.

In the statute in question great care was taken that by no collusion or fraud officers could make a return literally true, and apparently in conformity to the statute, and yet, the defendant have no notice of the suit.    This was rendered necessary by the frauds which had been practiced under the former statute, by persons specially deputised at the request of the plaintiff.    Under a former statute it was only required that writs should be served by leaving a copy at the last and usual place of abode of a defendant.    I

CALEDONIA,
March,
1832.

Barnet
vs.
Concord.

recollect hearing a case investigated where a judgement was recovered against a man to a large amount, and the first notice he had of the suit was, when the officer called to levy the execution. On examining the records the writ appeared to have been regularly served, and it was not until after much investigation that it was ascertained that copies were left at the house of the defendant, but in such a situation that it was designed he should never find them.

As the officer must state in his return the manner of service, so that a defendant can directly deny the return, if it is not true, and if it is true, that it may appear the defendant had regular notice of the suit, it will follow, that if this is not done, the return must be bad. The return on this warning does not state the name of the person with whom the copy was left. How could a defendant deny that the person with whom the copy was left was of sufficient discretion, when the return does not inform him with whom such copy was left? How can it be ascertained that this warning was served by leaving a copy with a person of suitable discretion? How can that assertion contained in the return be denied, and met with proof? And again, this return may be litterally true,though the copy was left with a child, or person of but very little discretion. The officer has undertaken to judge for himself in relation to the person with whom to leave the copy, and has left others, who may be affected by his return, no means of determining whether he judged correctly or not.

The case of *Reading* vs. *Rockingham*, 2 *Aik.* 272, has a very strong bearing on the question under consideration. The Court there remarked, that it was a material part of the statute, that the copy should be left with a person of sufficient discretion,and which if not done, would vitiate the service ; but as the person with whom the copy was left *was named*, though it was not added, that he was a person of sufficient discretion, the Court were inclined to think a defendant could avail himself of any advantage he was entitled to, either by an action against the officer, for omitting to perform his duty, or by an action for a false return, and that no additional burthen was cast upon the party in making the proof.

But when the person is not named, no action can be sustained for a false return. And unless we consider it the duty of the officer to name the person, for omitting which he would be liable to an action, a defendant would have no remedy against him when he had violated the spirit of the law in every essential particular.

The case of *Dodge* vs. *Pierce*, decided in Franklin county,

January, 1831, recognizes the principle on which the decision of this case is made, very fully.

CALEDONIA,
March,
1832.

Barnet
vs.
Concord.

On an examination of the statute, and on a review of the decisions which have been made thereon, we are of opinion that the service of this warning was defective, inasmuch as the constable has not stated the name of the person with whom he left the copy, and that he was a person of *sufficient* discretion, and has not given any means by which it can be decided whether he left the copy with a person of discretion.

It is unnecessary for us to decide the other questions which have arisen in this case, as to the effect of the residence of the pauper in *Barnet*, while under coverture, and since, though we are inclined to the opinion, that such residence did not give her a settlement in *Barnet* under the statute of 1817. The paupers were unduly removed to *Concord*, as they acquired a settlement in Waterford subsequent to their settlement in *Concord*. This will entitle the defendant to a new trial if he so elects.

There was also a motion to quash the proceedings in this case, which the Court must decide upon, as the town of *Concord* may still insist upon this motion.

The four first exceptions on which the motion is founded are not considered of any importance, and were properly decided by the county court. The fifth and sixth are of more consequence.

The fifth section of the statute of 1817 requires that a true and attested copy of the order of removal should be left with one of the overseers of the poor of the town to which the removal is made within thirty days after making the order. This copy should correspond with the original in every substantial part. If there is an omission in the copy which would be fatal, if it were in the original proceeding, the statute has not been complied with. There was such an omission in the copy which was left with the overseers of the poor of *Concord*, and they might have considered, that, if the original order was similar to the copy, it was defective, and on that account have neglected to take an appeal. They may here insist on this defect in the copy on this motion to quash.

The proceedings were also irregular in removing the paupers before the day given them by the court to remove themselves. The paupers might have gone out of the state, and have been no further chargeable to any town. The constable had no right to remove them before the day set for them to depart.

These proceedings were irregular in these particulars, and ought to have been quashed. The judgement of this Court,

CALEDONIA, therefore, will be, that the judgement of the county court is re-
March, versed ; that the proceedings be quashed, and the town of *Con-*
1832.
            *cord* recover their damages and cost, unless they elect to take a
Barnet      new trial upon the merits, waiving any advantage on account of
*vs.*        these irregularities.
Concord.